**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| BOBBY L. WILLIS and CARRIE S. WILLIS, individually and as trustees of the TRUST OF JAMES C. AND NORMA D. WILLIS,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE, et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:16-cv-03251-SRB |

## <u>ORDER</u>

Before the Court is Motion to Dismiss Count I of Second Amended Complaint for Lack

of Subject Matter Jurisdiction or, in the Alternative, for Partial Summary Judgment.  (Doc.

#186).  The motion is GRANTED.  Plaintiffs' Administrative Procedure Act claim in Count I of

the Second Amended Complaint is dismissed.

### I.    Factual Background

Defendants United States of America ("United States") and the United States Department

of Treasury, Internal Revenue Service ("IRS") (collectively "Defendants") and Plaintiffs Bobby

L. Willis, Carrie S. Willis, and the Trust of James C. and Norma D. Willis (collectively

"Plaintiffs") agree as to the facts that the Court finds to be relevant to this motion.  In the course

of executing a search warrant at a Branson, Missouri home on September 26, 2012, an IRS agent

seized 364,000 Presidential $1 coins belonging to Plaintiffs.  The coins were in rolls in 364

boxes, each containing 1,000 coins.  The day following seizure of the coins, IRS agents

transported the 364,000 Presidential $1 coins to Dunbar Armored, an armored car/cash management company in Kansas City, Missouri.

Dunbar opened the boxes containing the coins, took the coins out of the rolls, and placed the coins into a coin-counting machine. Dunbar wire transferred $364,000 to the Treasury asset forfeiture bank account. The coins were left with Dunbar, and the IRS did not retain possession of the coins.

In April 2015, the IRS informed the Plaintiffs that the 364,000 Presidential $1 coins had been "converted to cash and deposited into the government's account." (Doc. #186-2). Thereafter, at the Plaintiffs' request, the IRS wire-transferred $364,000 to the Plaintiffs' attorney. In the Second Amended Complaint, Plaintiffs allege the coins' value in the condition in which they were seized, i.e. in rolls and in boxes, was well beyond the $364,000 face value of the coins because they were collector's items. The parties agree that the value of the coins as collector's items, whatever that value may have been, was destroyed when the coins were deposited into general circulation.

## II. Procedural History and Legal Standard

Count I of Plaintiffs' Second Amended Complaint is a claim "to recover Plaintiffs' Coins against Defendant United States of America, acting through the IRS, pursuant to the Administrative Procedure Act ('APA'), 5 U.S.C.A. § 702[.]" (Doc. #67, p. 18). The APA provides in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

(emphasis added).

Plaintiffs allege in Count I, "The Coins are personal collector's items that were collected by Plaintiffs, and Plaintiff Bobby Willis's late grandfather, such that the coins have special and sentimental value." (Doc. #67, ¶ 99). Plaintiffs further allege, "As such, there is no adequate remedy at law and the only adequate remedy is for the Coins to be returned to Plaintiffs." (Doc. #67, ¶ 100). In the prayer for relief to Count I, Plaintiffs request "equitable relief against Defendant United States of America in the form of an ORDER and MANDATE requiring that Defendant United States of America return the Coins to the Plaintiffs[.]" (Doc. #67, p. 18).

On February 24, 2017, the Court issued an order that in part denied Defendants' motion to dismiss Plaintiffs' APA claim for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). On March 10, 2017, Defendants filed an Answer to the Second Amended Complaint. Defendants amended their answer on August 10, 2017. Defendants now move to dismiss Count I for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) or, in the alternative, for partial summary judgment. Defendants fail to inform the Court how it can consider the motion as one made under Rule 12(b)(1) given that Defendants previously filed a Rule 12(b)(1) motion on this issue that was denied and given that Defendants have now answered the Second Amended Complaint. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). As a result, the Court will consider Defendants' standing argument in the context of a motion for summary judgment.

Defendants argue in the present motion that the coins cannot be returned to Plaintiffs, and as a result, Plaintiffs lack standing to pursue their APA claim because Plaintiffs' injury cannot be redressed by a favorable decision of the Court. In opposition Plaintiffs argue, "The Court has the

ability to redress plaintiffs' injury by requiring the IRS return the illegally seized coins or requiring the IRS to pay the exact value of the coins, which would be fair restitution." (Doc. #191, p. 22). Plaintiffs' position is that the "exact value of the coins" is well beyond $364,000 face value. In reply the Defendants argue that awarding Plaintiffs the "exact value" they seek would constitute money damages, a claim which falls outside the APA's waiver of sovereign immunity.

The three elements that constitute the "irreducible constitutional minimum of standing" are: 1) injury in fact; 2) "a causal connection between the injury and the conduct complained of"; and 3) a likelihood the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The United States Supreme Court in *Lujan* implicitly recognized the use of a summary judgment motion to attack standing, an issue which implicates the Court's subject-matter jurisdiction. *Id.* at 561. In reversing the lower court's denial of the Defendant United States Secretary of the Interior's motion for summary judgment based on standing, the Supreme Court stated:

> The party invoking federal jurisdiction bears the burden of establishing th[e] elements. . . . Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. . . . At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*Id.* (internal quotation marks and case citations omitted). Although the parties dispute whether the coins' seizure was legal and whether the subsequent processing of the coins was in violation

of IRS policy, the parties do not dispute the facts the Court finds to be relevant to the resolution of this motion.

## III.    Discussion

Defendants argue Plaintiffs lack standing to pursue their APA claim because the coins have been put into general circulation, and Defendants could not return the coins even if ordered to do so.  Defendants further argue that any order of the Court in Plaintiffs' favor would not redress their injury.  Plaintiffs recognize that the coins' value has been destroyed by removing the coins from the rolls and boxes and placing the coins into general circulation.  (Doc. #191, ¶ 39).  Even so, Plaintiffs argue that "requiring the IRS to pay the exact value of the coins" would redress their injury.  (Doc. #191, p. 22).  Plaintiffs' position implicates not just standing but also sovereign immunity.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." [1]  *U.S. v. Mitchell*, 463 U.S. 206, 212 (1983).  The APA as amended to its present form, "was intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by the amendment[.]"  *Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988).  The APA does not waive sovereign immunity for actions seeking "money damages."  *Id.* at 893.

In *Bowen* the United States Supreme Court analyzed the meaning of "money damages" as used in the APA:

> Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee

---

[1] While the parties did not address the correct legal standard the Court must apply in considering the sovereign-immunity issue, the Court notes that Federal Rule of Civil Procedure 12(h)(3) allows the court to consider its subject-matter jurisdiction "at any time."

with backpay, or for the recovery of specific property *or monies*, ejectment from land, or injunction either directing or restraining the defendant officer's actions.

*Id.* at 893 (internal quotation marks and citation omitted). The Supreme Court also quoted with approval a decision from the Court of Appeals for the District of Columbia Circuit:

The term "money damages," 5 U.S.C. § 702, we think, normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing wo which he was entitled. . . . Thus, while in many instances an award of money is an award of damages, occasionally a money award is also a specie remedy. . . . Courts frequently describe equitable actions for monetary relief under a contract in exactly those terms.

*Id.* at 895 (quoting *Maryland Dep't. of Human Res. v. Dep't. of Health and Human Servs.*, 763 F.2d 1441, 1446 (U.S. App. D.C. 1985)) (internal quotation marks and citations omitted).

The Supreme Court later expounded upon its holding in *Bowen*:

As *Bowen* recognized, the crucial question under § 702 is not whether a particular claim for relief is "equitable" (a term found nowhere in § 702), but rather what Congress meant by "other than money damages" (the precise terms of § 702). . . . *Bowen's* interpretation of § 702 thus hinged on the distinction between specific relief and substitute relief, not between equitable and nonequitable categories of remedies.

*Dep't. of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261-62 (1999).

Plaintiffs characterize their request for an award of the "exact value of the coins" as one seeking restitution. However, in asking the Court to award them the value of the coins in the condition the coins were in when seized and as collector's items, Plaintiffs seek monetary compensation for an injury to their property. Plaintiffs seek the "exact value of the coins" as a substitute remedy for the coins themselves. Plaintiffs' claim, then, is one for money damages which is outside the scope of the APA's waiver of sovereign immunity.

Plaintiffs' reliance on *America's Cmty. Bankers v. F.D.I.C.*, 200 F.3d 822 (D.C. Cir. 2004), does not compel a different result. There, the court held that Bankers could pursue an

APA claim "seeking a declaratory judgment that its members [were] statutorily entitled to a refund of the FICO portion of the September 30, 1996, assessment." *Id.* at 827. In seeking a refund of an assessment the members had already paid, Bankers was asking the Court to return to it fungible funds that should have never been collected. The relief requested by Plaintiffs here is substantially dissimilar. While the coins are technically funds, they are not fungible in the sense that Plaintiffs are asking the Court to award them the value of the coins as collector's items – a value Plaintiffs argue is well in excess of the $364,000 face value.

The Court finds Plaintiffs lack standing to pursue their APA claim for return of their 364,000 $1 Presidential coins because no order of the Court could ensure the coins' return in any condition, much less in the condition in which they were seized. The Court further finds Plaintiffs are barred by sovereign immunity from seeking to recover "the exact value of the coins" in connection with the APA claim. The Court does not by this Order "absolve[] [the government] of its responsibility by reason of its malfeasance" as Plaintiffs argue. (Doc. #191, p. 22). The Court does not find that Plaintiffs are precluded from seeking a remedy for the destruction of the value of their property; the Court finds only, as it must, that the APA is not a legally-viable avenue for the Plaintiffs to obtain that remedy.

## IV.    Conclusion

Accordingly, it is hereby ORDERED that the Motion to Dismiss Count I of Second Amended Complaint for Lack of Subject Matter Jurisdiction or, in the Alternative, for Partial Summary Judgment (Doc. #186) is GRANTED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATE: December 21, 2018